# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| BOAZ PLEASANT-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02502-TLP-tmp |
| v. | ) | |
| | ) | |
| SHELBY COUNTY, ROBERT MOORE, Chief Jailer at Shelby County Jail, and "FNU" GATEWOOD, Detention Response Team Officer, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Boaz Pleasant-Bey, an inmate at the Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee sued pro se under 42 U.S.C. § 1983. (ECF No. 1.) He alleges that Defendants violated the First Amendment by maintaining a policy preventing him—and others—from wearing religious headgear outside their cells. (*Id.*) Defendants, Shelby County, Chief Jailer Robert Moore, and Officer Charles Gatewood move for summary judgment. (ECF No. 36.) Plaintiff responded in opposition (ECF No. 39), and Defendants replied (ECF No. 42). For the reasons below, the Court **GRANTS** Defendants' motion for summary judgment.

## BACKGROUND

The Court takes these facts from Defendants' Statement of Undisputed Material Facts,[1] (ECF No. 36-2), Plaintiff's Statement of Undisputed Material Facts, (ECF No. 40 at 159–61), and Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (ECF No. 42-1).

Plaintiff was a pretrial detainee housed in the Shelby County Criminal Justice Complex ("CJC"), located at 201 Poplar Avenue, Memphis, Tennessee 38103 from February 2007 through December 2011.  (ECF Nos. 36-2 at PageID 131; 1 at PageID 3; 40 at PageID 159; 42-1 at PageID 175.)  While detained at CJC, Plaintiff lived in the housing units ("Pods") on the First, Third, and Fourth floors.  (ECF Nos. 40 at PageID 159; 42-1 at PageID 175.)

The CJC is a pretrial detention facility with less population stability than in facilities which mainly house convicted inmates.  (ECF Nos. 36-2 at PageID 132; 36-3 at PageID 136.).

Plaintiff alleges that even though the CJC had a policy banning kufis outside cells and religious services, in practice, each Pod officer may allow inmates to wear kufis after the Pod officer inspected it for security purposes. (ECF Nos. 40 at PageID 159–60; 42-1 at PageID 175–76.)  For example, during 2016 and 2017, the CJC housed Plaintiff at the CJC in Pod 4-B while on a post-trial petition.  (ECF Nos. 40 at PageID 160; 42-1 at PageID 175.)  Plaintiff claims that this Pod housed other Muslims, and they were all permitted to wear their kufis after a security check.  (ECF Nos. 40 at PageID 160; 42-1 at PageID 175.)

---

[1] Plaintiff failed to respond to Defendants' Statement of Undisputed Material Facts.  *See* W.D. Tenn. L.R. 56.1(b) ("[T]he non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant" and "by specific citation to the record.").  "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment." W.D. Tenn. L.R. 56.1(d).  As a result, for summary judgment, the Court considers Defendants' version of the facts undisputed.

Plaintiff is a Muslim and, as a Muslim, he wears a kufi or a turban.  (ECF No. 1 at PageID 2–3.)  Plaintiff maintains that Defendants violated the First Amendment by preventing him from wearing his kufi outside his cell.  (ECF Nos. 36-2 at PageID 131; 1 at PageID 3.)  Plaintiff alleges that Chief Moore ordered Officer Gatewood to remove Plaintiff's kufi.  (ECF Nos. 40 at PageID 160; 42-1 at PageID 176.)  But Plaintiff had been wearing his kufi in his Pod every day for at least one week before the incident.  (ECF Nos. 40 at PageID 160; 42-1 at PageID 175.)  And Plaintiff alleges that Defendant Gatewood, on at least one occasion, "aggressively" grabbed at the kufi, forcing Plaintiff to remove it and walk to his cell.  (ECF No. 1 at PageID 3.)

According to Defendant Moore, the CJC has had problems with inmates coming into the facility from other penal institutions "wearing religious headgear as a means of concealing contraband."  (ECF Nos. 36-2 at PageID 132; 36-3 at PageID 136.)

Inmates can use headgear—religious or otherwise—to conceal weapons, drugs, or other contraband.  (ECF No. 36-2 at PageID 133; 36-3 at PageID 137.)  Even small headwear, like kufis, can conceal smaller weapons such as razor blades or small packets of drugs.  (ECF No. 36-2 at PageID 133; 36-3 at PageID 137.)  And allowing some inmates to wear headgear can cause jealousy and theft among inmates.  (ECF No. 36-2 at PageID 133; 36-3 at PageID 137.)  Complicating matters even more, security personnel could not complete full contraband searches because inmates would assert that the officers could not touch religious items as a part of that search.  (ECF Nos. 36-2 at PageID 132; 36-3 at PageID 137.)

So the CJC limited religious headgear in the Pods.  During the relevant timeframe of Plaintiff's complaint, the CJC's policy or practice was to allow religious headwear—including kufis—during scheduled religious services or within cells if an inmate could not participate in

group religious services.  (ECF Nos. 36-2 at PageID 132; 36-3 at PageID 137.)  This meant that, generally, inmates could not wear headgear of any kind at any other time or location in the CJC.  (ECF Nos. 36-2 at PageID 132; 36-3 at PageID 137.)

Defendants recognize however that the security threats from possible drug and weapon concealment, jealousy, and theft justifying the religious headgear ban still exist even when an inmate is in his cell or at a scheduled religious service.  (ECF Nos. 36-2 at PageID 134; 36-3 at PageID 137–38.)  But the CJC sought to strike a balance between its interests in safety, security, and order in the facility and the First Amendment rights of those inmates with sincerely held religious beliefs.  (ECF Nos. 36-2 at PageID 133; 36-3 at PageID 137.)

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  *Bruderle v. Louisville Metro. Gov't*, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Mosholder*, 679 F.3d at

4

448–49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.  If "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); *see also Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

The parties must cite "to particular parts of materials in the record" to "show that a fact is, or is not, genuinely disputed," "showing that the materials cited do not establish the absence or presence of a genuine dispute" or showing "that an adverse party cannot produce admissible evidence to support the fact."  *Bruederle*, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  *Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008), *abrogation recognized by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)).

Ultimately, the "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" *Rachells v. Cingular Wireless Employee Services, LLC*, No. 1:08 CV 02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990)).

"[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251). "[T]o withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (citing *Liberty Lobby*, 477 U.S. at 247–54; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." *Rachells*, 2012 WL 3648835, at *2 (quoting *Thomas v. Christ Hosp. and Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003)). Statements in affidavits that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. See *Mitchell*, 964 F.2d at 584–85.

## **ANALYSIS**

Section 1983 creates "a species of tort liability" when state officials violate a person's constitutional rights. *See* 42 U.S.C. § 1983; *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017); *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Plaintiff alleges that Defendants violated his First Amendment rights. (ECF No. 1 at PageID 3.) Defendants argue they are entitled to summary judgment because the CJC has a legitimate penological interest in restricting headgear. (ECF No. 36-1 at PageID 124–26.) For that reason, according to Defendants, they have not violated Plaintiff's First Amendment right to the free exercise of his religion. (*Id.*)

Plaintiff alleges that, by preventing him from wearing his kufi, Defendants violated his First Amendment right under the Free Exercise Clause. (ECF No. 1 at PageID 3.) The Free Exercise Clause prohibits governmental burdens on a person's free exercise of religion. *See* U.S. Const. amend. I. Though prisoners retain their First Amendment rights during incarceration, "the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011).

As a result, "[w]hen a prison regulation substantially infringes on an inmate's First Amendment religious practices, 'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In other words, where a regulation infringes on an inmate's First Amendment religious practices, there is no § 1983 claim for violating that right where the regulation is reasonably related to some legitimate penological interest.

Defendants' actions here did not unconstitutionally infringe Plaintiff's free exercise of his religion because the CJC has a legitimate penological interest in restricting all headgear—both religious and secular—for many reasons. In a jail or prison setting, ensuring safety, security, and order are legitimate penological interests. "Maintaining security, order, and

7

discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures." *Hayes*, 424 F. App'x at 549; *see Bell v Wolfish*, 441 U.S. 520, 546–47 (1979).  "[B]ecause 'the problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [courts] generally have deferred to the judgment of prison officials in upholding these regulations against constitutional challenge."  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (quoting *Procunier v, Martinez*, 416 U.S. 396, 404–05 (1974)) (internal citation omitted).

   Defendant Moore's affidavit states that the CJC restricts the wearing of religious headgear for safety and to maintain order throughout the facility. (*See* ECF No. 36-3.) He explained that the facility restricts headgear because inmates could conceal weapons, drugs, or other contraband in the headgear. (ECF Nos. 36-1 at PageID 125–26; 36-3 at PageID 137.) What is more, he stated that the restriction on headgear helps maintain order in the CJC because allowing only some inmates to wear headgear causes jealousy and theft between them. (ECF Nos. 36-1 at PageID125–26; 36-3 at PageID 137.)

   Although the Sixth Circuit has not specifically addressed an inmate seeking to wear a kufi, many other Circuits have held that restrictions on religious headgear (like a kufi) are valid when the defendants state a legitimate penological interest in doing so.  *See, e.g.*, *Portley-El v. Zavaras*, 188 F.3d 519 (10th Cir. 1999) (holding a religious headgear policy was valid "[b]ecause such religious headgear may be used to conceal drugs, weapons, or other contraband, and may spark internal violence among prisoners"); *Freeman v. Arapaio*, 125 F.3d 731, 736 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) ("[T]o establish a free exercise violation, [plaintiff] must show the defendants

8

burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."); *Muhammad v. Lynaugh*, 996 F.2d 901, 903 (5th Cir. 1992) ("Allowing inmates to wear . . . religious articles . . . conceivably could undermine the TDJC's legitimate penological interests, primarily its overriding concern for prison security."); *Young v. Lane*, 922 F.2d 370, 374 (7th Cir. 1991) (rejecting a challenge to a rule limiting religious headgear when the defendant stated a strong interest in uniform dress regulations); *Rogers v. Scurr*, 676 F.2d 1211, 1216 (8th Cir. 1982) (finding no constitutional violation by the limitation of religious garb when the defendants asserted a need to safeguard institutional security); *St. Claire v. Cuyler*, 634 F.2d 109, 116 (3d Cir. 1980) (upholding limitations on religious headgear for security reasons).

At bottom, "[t]he needs of the institution and penological objectives must be balanced against the right of the individual prisoner." *Jihaad v. O'Brien*, 645 F.2d 556, 564 (6th Cir. 1981). Allowing inmates to wear religious headgear in areas outside their cells and during activities other than religious services "conceivably could undermine the [prison's] legitimate penological interests, primarily its overriding concern for prison security." *Muhammad*, 966 F.2d at 903 ("[P]rison regulations restricting the use of Kufi caps and religious insignia bore reasonable relationship to legitimate penological interest of prison security.").

The Court finds that Defendants' restriction on religious headgear, except in an inmate's cell and during religious ceremonies, does not violate the First Amendment here because the regulations bear a reasonable relationship to the CJC's legitimate penological interest of prison security.

In response, Plaintiff makes many arguments against summary judgment. But none of his arguments hold water. The Court addresses each of his arguments in turn.

Plaintiff first argues that although the CJC's policy restricted religious headgear in the Pods, some Pod officers allow inmates to wear headgear after a security check. (ECF No. 39 at PageID 143–44.) According to Plaintiff, then, Chief Moore's enforcement of the policy restricting headgear violated his constitutional rights because the CJC's custom relaxed that policy and allowed religious headgear in the Pods. (*Id.* at PageID 144–46.) But Plaintiff does not provide legal support for his position, nor does the Court find support for his arguments. Using somewhat circular logic, Plaintiff argues that the CJC had a more liberal policy of allowing religious headgear at one time but then Defendants Moore and Gatewood unduly restricted that approach under the CJC's more restrictive policy, which violated his First Amendment rights. (ECF No. 39 at PageID 143–44.)

Plaintiff's reasoning seems to misunderstand liability for unconstitutional customs and practices under § 1983. In some cases, a municipality may be liable under § 1983 when it maintains or tolerates a practice by its employees which violates an individual's constitutional rights. *See, e.g.*, *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) ("A municipality may not be held liable under § 1983 solely because it employs a tortfeasor. Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the injury.") (internal citations omitted); *see also*, *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978).

That Defendants, at one time, maintained an even less-restrictive custom applying to the headgear policy does not then turn the CJC's official policy into a constitutional violation. *See Muhammad*, 966 F.2d at 903; *see also*, *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013) ("A municipality can be liable under 42 U.S.C. § 1983 *only* if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom . . .

10

."). This Court has already held that the CJC's official policy restricting headgear except in an inmate's cell and at religious ceremonies does not violate the First Amendment. (*See supra* pp. 9.)

Having already found that this policy was constitutionally permissible, the Court could only find a constitutional violation in the event of a more restrictive application of the policy not rationally related to some legitimate penological interest, or where no legitimate penological interest exists. Logically, then, an even less restrictive custom—such as allowing inmates to wear religious headgear in the Pods after a security check—could not violate Plaintiff's First Amendment rights. Plaintiff's argument about the CJC's less restrictive former custom is therefore unpersuasive. And because neither the CJC's official policy or less restrictive custom violates Plaintiff's First Amendment rights, the Court finds it unnecessary to address whether Chief Moore had a valid basis for restricting Plaintiff's ability to wear his kufi.

And Plaintiff argues that Chief Moore is not an expert witness and so his affidavit providing the legitimate penological reasons for restricting religious headgear is inadmissible. (ECF No. 39 at PageID 146.) Defendants counter that they do not submit Chief Moore as an expert witness, but a witness with knowledge who can testify about the reasons the CJC limits religious headgear. (ECF No. 42 at PageID 173.)

But Defendants need not offer expert testimony to establish a legitimate penological interest. The Sixth Circuit has made clear that "[a]s long as prison authorities present evidence to support their judgment that prison security will be undermined with no challenged regulation, [the court] will not substitute [its] judgment for theirs. *Brown v. Johnson*, 743 F.2d 408, 412–13 (6th Cir. 1984) (citing *Otey v. Best*, 680 F.2s 1231, 1233 (8th Cir. 1982) and *St. Claire v. Cuyler*, 634 F.2d 109, 114–15 (3d Cir. 1980)). Because Defendants do not tender Chief Moore

11

as an expert witness, he need not satisfy the standards under *Daubert* for expert witnesses, and the Court accepts his affidavit of personal knowledge as sufficient evidence supporting the CJC's limitations on religious headwear.

## **CONCLUSION**

In the end, Plaintiff's claim under the Free Exercise clause fails.  The CJC's regulation restricting the use of kufis or other religious headgear bears a reasonable relation to its legitimate penological interest of prison security and order.  *See Muhammad*, 966 F.2d at 903.  Under these circumstances, there is no genuine dispute as to any material fact on Plaintiff's First Amendment free exercise claim and Defendants are entitled to summary judgment.  *See* Fed. R. Civ. P. 56(a).  The Court therefore **GRANTS** Defendants' motion for summary judgment.

**SO ORDERED**, this 22nd day of July, 2020.

                                        s/Thomas L. Parker
                                        THOMAS L. PARKER
                                        UNITED STATES DISTRICT JUDGE